Our first case for argument is Solis-Padilla v. Holder. Good morning, Your Honors. I am Edgaro Quintanilla. First of all, I want to thank the Court for the opportunity to appoint pro bono counsel. Sitting at the petitioner's table is Julian Poon, who wrote the amicus brief in this case, and Julie Sankel, who will be arguing. Thank you to the Court for the opportunity for Ms. Sankel to make the argument. I'm going to reserve 30 minutes of my time, which I will give to Ms. Sankel, to present the rebuttal in this case. Your Honors, this is a case in which the Court has presented an untenable position to you that a written statement in a withdrawn asylum application, in a statement in a cancellation or removal application, is evidence of a particular conviction, even if the alien never testified about it, and even if whatever that particular conviction was, there is no reference to what particular code or statute was violated. This is a case that arises that involves a claim involving a motion to reopen filed with the BIA that claimed ineffective assistance of counsel who represented Mr. Solis before the Immigration Court in Los Angeles, and removal proceedings filed by the government. The sole charge by the government was that Mr. Solis was here without documents. There was no legal charge filed by the government that Mr. Solis had violated any particular criminal conviction, and let alone that that conviction was an aggravated felony. Let me ask, I just kind of want to understand the record here. Yes, Your Honor. Amicus Counsel may have some more insight on this. So you just made reference to the application for asylum that had been submitted at the hearing, at the removal hearing. That is correct. All right. Now, if I look at this document, it's got all kinds of handwriting all over it. This also has been filled in by some typewriting, it looks like. That is correct, Your Honor. Is that right? That is correct. So when he submitted it, who submitted this on his behalf? It was not submitted on his behalf. It was basically, it should have been referred by the CIS asylum officer who referred the case to the Immigration Court. So did he, did Mr. Solis submit this, did he submit it to the immigration judge, or was it already in the, in the, in processing? It was already as part of the file, as the Immigration Service had to file what is called a notice to appear, which is found in the administrative record at page 124. Along with that notice to appear, there would have been the asylum application. But Mr. Solis withdrew that asylum application. But did he, did he appear in front of an asylum officer at some point? He should have appeared before an asylum officer, although the record does not say so, because the notice to appear, the charging document against Mr. Solis, that particular document was not. We don't know if these handwritten notes on this document are Mr. Solis's, do we? No. There is no evidence. One way or the other. That is correct. Okay. There is no, no, no evidence in the record that that is, that that was the case. Okay. Does Mr. Solis speak and write English? He might speak some English, although the proceedings were translated to him in Spanish. We don't even know whether he writes English. There is no evidence on the record. One way or the other. One way or the other. That is correct.  Yes, Your Honor. And that is, so then he, ultimately he files a motion to reopen, which gets us here, right? That is correct. And in, and in support of that motion, he submitted a. An application for cancellation of removal under 8 U.S.C. 1229 B.B. The motion to reopen is found at page 17 of the administrative record. And this is where he, somebody typed in, Honor, about 1986, I was arrested by police officers for sale of cocaine. That is correct, Your Honor. I was detained for 19 months. I finished my parole. No further proceedings. That is correct, Your Honor. The contention and argument that we are presenting to you is that that particular statement does not refer to any specific code. It merely refers to an arrest. It doesn't say what specific, particular legal statute or penal code was violated. And so in the, in the, in the cases that sometimes come before you that involve, for example, challenges to whether a case is an aggravated felony, most of the time there is a, an abstract of judgment, a police report, but not in this particular case. Well, they, they seem to have taken the position, if I looked at the record correctly, that if he was incarcerated for 19 months and it was for sale of cocaine, then under California law, was this California? The statement doesn't say so. It doesn't say. It doesn't say what they did. They seem to take the, regardless, they seem to take the position that it had to have been an aggravated felony. Is there, is there a way for somebody to get 19 months for sale of cocaine and have it not be an aggravated felony? I don't know, Your Honor. Neither do I. The, the, the, the position that, that we take is that the, that there is no record of any, any conviction, no reference to any particular code that was violated. For example, in the analysis that this court undertakes as to challenges to what constitutes an aggravated felony in this court, when you undertake this categorical analysis and modify categorical analysis, for example, in Ramirez v. Alpando v. Holder, decided last April, 2010 Westlaw 1407959, the, the court comes down with this decision that even if a conviction is, even if a conviction is not an aggravated felony under a categorical approach, it is an aggravated felony under the modified categorical approach. If there is a criminal charging document in the record, in combination with an abstract of judgment, those records are missing from this particular case. Well, he, he ultimately, he ultimately agreed to voluntary departure, is that right? That is correct. At one point. And that has far less severe consequences than if he's booted out of the country, right? That, that is, that is correct. So what, I mean, what is the import of the aggravated felony? Because if he voluntarily departs, when he chooses to come back in, or if he chooses to come back in, then at that point, wouldn't they, wouldn't there then be some determination as to whether his conviction was an aggravated felony or not? That is correct. I'm trying to see where the, where the harm was here, the actual harm in the final analysis, even if there was a, even if there was a mistake made. Yes. The actual harm is what we claim is the prejudice to the, to the client that he was not given an opportunity to seek the relief of cancellation or removal. Okay. So, so what, what's your, your basic argument is, as you put in your papers, I think, that these $250 meet-you-for-the-first-time lawyers didn't properly advise him regarding his potential right to stay here, and he shouldn't have agreed to voluntary departure. Am I right? That is correct. But the record also shows that the first attorney who represented Mr. Solis before the immigration court, that attorney requested the relief of cancellation or removal. And the government has to concede today that Mr. Solis has never, never waived this, this form of relief. He never said, I waived it, so it didn't. So what happened? They just denied it, or they, they didn't take it up? Or in the meantime, he then agreed to voluntary removal? Your Honor. His second lawyer didn't. Right. Follow up. Didn't submit the application. He never followed it. But, yeah, you're not suggesting the first lawyer submitted the application. No, Your Honor. The first lawyer said that he was, on behalf of Mr. Solis, he was requesting the relief of cancellation. But you have to submit an application. You can't just say it. Right. And then he never did it. No. The first lawyer didn't do it, but he did. And then the second lawyer didn't do it either. Right. Didn't do it, didn't do it, and he immediately said he didn't bring it. And, however, there was. He didn't bring it. There was no discussion of the, by the immigration court to Mr. Solis. What happened, Mr. Solis? Why didn't you bring this? Mr. Cantillo, if you could continue, if you're going to save time for your. Yes, Your Honor. Thank you very much. Thank you. Now is the time. Let's hear from Amicus County. Then the government can reply to everything. Good morning. I'm Julie Zankel. I'm here as Amicus Council on behalf of Mr. Solis Padilla. As you were discussing, we are here today because Mr. Solis Padilla was denied the opportunity to seek cancellation of removal. And I think going not to reiterate what's already been said, I just wanted to discuss that despite the ambiguity in the record, even assuming the worst, I would argue that Mr. Solis Padilla is still not per se ineligible for the removal of Mr. Padilla. Mr. Solis Padilla himself makes the Board of Immigration Appeals decision in abuse of discretion. An alien with a felony conviction can still demonstrate good moral character and a lack of disqualifying conviction. Because Mr. Solis Padilla's conviction, even if it exists, occurred in 1986, the conviction cannot serve as a statutory bar to good moral character because the conviction took place before the Immigration Act was amended. And the section that expanded the definition of aggregated felony cannot be applied retroactively. And that argument wasn't made before the BIA, was it? That argument wasn't made. I mean, that argument essentially is that he should be allowed to apply for suspension of removal, or suspension of deportation. That argument wasn't specifically made, but I think there is case law saying that you don't need to magically label exactly what you're arguing for. There are a number of cases saying that you don't need to be precise in your application. As I read your argument, it's a little more nuanced than I think is reflected in the briefs, which is essentially that there was ineffective assistance of counsel because at the time he waived his right to appeal. But at that time, what the second lawyer should have done was to say he can't apply this, assuming he has this conviction, he can't apply it retroactively to deny him the opportunity to seek suspension of relief. Correct. Right? And so he should be allowed under St. Cyr, as Judge Fletcher laid out in Castellanos, should have been allowed to have sought suspension of a deportation, which at that time, prior to Irira, wouldn't have had the bar of the aggravated felony. Isn't that right? That's what the argument was. The argument was... So the claim is that the lawyer was ineffective because any reasonable, competent lawyer would have understood all of those nuances. Right? That's correct. But in addition, the second argument is that even in the context of cancellation of relief, Mr. Solis-Padilla would have had to prove a lack of a disqualifying conviction. And in this record, it's not clear that he is automatically has a disqualifying conviction because there's no evidence of whether he pled to some lesser or... Well, let me ask you this. If you just want to look at cancellation of removal, if you were to look at his application, he's supposed to submit an application for cancellation, which he did. Correct. Correct. And if you look at his statement that I read, it goes on to say, I finished my parole. Yes. Now, that doesn't suggest that one was just arrested on a... When the board is confronted with a motion to reopen, it's a discretionary determination. They're looking at everything. And so they look at the board member, whoever looks at this, and, hmm, I finished my parole. No further proceedings. That would suggest, if you read this completely, that he had been, suffered a conviction for selling cocaine. Your Honor, I think it would perhaps suggest that, but I think that because of his ineffective assistance of counsel, we can't be sure that he knew the importance of being completely precise in what he was saying in his application. It's not clear that he knew that if he pled to a lesser offense, he should have said that in his application. Well, let me ask you this. Do you claim that the lawyer who filed this motion to reopen was ineffective? No. I do not claim that. His initial lawyer in front of the immigration judge did not get the necessary information. And because of this deficient performance, we do not have the required information. We need to know whether he's eligible or not. And so, therefore, you know, the petitioner on appeal does not need to explain exactly what evidence he would have presented in support of his application. He only needs to show a plausible grounds for relief. And I think based on this record, he has shown that there is a plausible way that he is eligible for relief. I think your first argument is the sounder one. Thank you. Do you have any additional questions in my 15 seconds? You're actually over by 20 seconds. Oh, wow. We'll give you some time for rebuttal. Okay. Thank you very much. Good morning. Ethan Cantor, Department of Justice, on behalf of the respondent. Just to address the questions raised with regard to the record by the court, noting the handwriting on the asylum application, I think if the court were to compare administrative record page 114 with 111, 114 has the notation and signature of the asylum officer, making clear that it was heard and interviewed by an asylum officer. I kind of think when I looked at that, I thought that's probably what had happened here. Not to suggest I'm a handwriting expert, but if one were to compare the signature of the asylum officer and the handwriting, it would stand to reason they are by the same hand. Nonetheless, the asylum application has not been disavowed, although counsel has referred to it as having been withdrawn. It was not withdrawn for lack of accuracy. It was withdrawn in the context of a hearing in which voluntary departure was being granted, and I would add, the maximum benefit under that statute. And by statute, all pending applications for relief must be withdrawn. So it was withdrawn for that reason. Okay. Well, let me ask you a quick question. If we have a situation here where nobody – it appears that the asylum application – the petitioner here is the one who disclosed his conviction, right? Yes. And he is not necessarily – I don't know, because I don't know the man, obviously, but it appears that he may not have been the most precise and articulate of individuals in the English language, okay? Yes. So he may be, you know, Cervantes or something in Spanish, but he's not great in English. So here we go. He says he got convicted of selling cocaine. That may have been the underlying conduct. Maybe he pled to something less. You know, we don't know. He gets 19 months. Nineteen months is not a lot of time, even then, for where he got – selling cocaine is multiple years, generally. So maybe he pled to something less that it would not be an aggravated felony. It doesn't appear from the record that anybody along the way ever did any analysis of his real conviction and what the consequences of that were and whether, indeed, it was an aggravated felony, which would require his removal under the most extreme circumstances. And it doesn't appear that his lawyer ever attempted to do that either. Isn't that troubling? I think the context is important here because, as Mr. Quintanilla was alluding to, instances where conviction records are examined under categorical and modified approaches, these are circumstances in which often it's establishing a removability ground where the government, indeed, has a burden by clear, convincing and unequivocal evidence to establish the ground. By contrast, these are applications for relief brought by the petitioner, upon whom the petitioner has the burden, not only in the reopening context, but as Ms. Zankel pointed out, she stated, he would have had to prove the lack of a disqualifying conviction if cancellation of removal and post-irere rules applied, but not with regard to suspension. That's key. But counsel, are we then right back to Judge Paez's point? It doesn't appear that his counsel, in fact, Judge Fletcher also made the same point. It doesn't appear his counsel, who, and I agree with you. I mean, you're right on the law. I don't think Petitioner's counsel would suggest otherwise. They had the burden. But it doesn't appear that his lawyers ever did anything with respect to suggesting he might be eligible for some sort of additional relief, and they just said, well, they're going to let you voluntarily depart. Goodbye. I don't think the record bears that out. If one reads, and it's a very short hearing transcript, in January 2002 and July 2002, you have government counsel, Petitioner's counsel, and the immigration judge really trying very hard to find a way to grant this individual some sort of relief. They are cancellation of removal and voluntary departure were initially sought in January 2002. However, because of the lack of qualifying relative and the apparent disqualifying conviction suggested by the Petitioner's own asylum application, the immigration judge and Petitioner's counsel, there's a colloquy in which they say, is he eligible? No. But the immigration judge stated, but I'm going to let you file an application anyway because this is your first hearing and I don't think you're eligible, but go ahead, get your fingerprints, file an application. Comes back and does not. It looked to me like the immigration judge was begging the lawyer and the lawyer was not doing anything. Okay. Well, to the extent that the claim is ineffective assistance of counsel because the first lawyer did not do enough investigation as to the criminal conviction on reopening. The record shows that he didn't do any investigation, not enough, zero. I would beg to differ with that insofar as the first attorney believed he had a disqualifying conviction and a lack of qualifying relatives. Well, all right. And neither of those facts have been proven to the contrary or even any evidence submitted to call it into question. Even the second attorney who moved to reopen, he did not, and I would submit this is important in terms of demonstrating prejudice. He might have presented conviction records and all these other things. This is the presumably competent counsel who should have done the investigation work that he faulted the first counsel for not doing. And yet, despite the burden being on that counsel, being on that petitioner, that's the point in time at which you, under the law, is said, look, come forward and make your prima facie case. This is your opportunity. And it's a case, moreover, in which the statute places upon the petitioner the burden to show the lack of a disqualifying conviction. That's a statutory burden.  And yet, contrary to calling into question the asylum application, filed a cancellation application, which corroborated the arrest, and as Your Honor said, not the most artfully stated, you know, language. However, it corroborated sale of cocaine, a prison sentence, and parole. Counsel, kind of to change the subject a little bit, tell me the difference in the qualifications for suspension and cancellation. Yes. The difference, the main difference is that a disqualifying conviction, such as an aggravated felony drug conviction, would not necessarily preclude an application for deportation. And I think that the cases of this Court, in Lopez-Castellanos, Hernandez-Day-Anderson, and Jimenez-Angeles, all demonstrate that the key is, and following on the Supreme Court's St. Cyr decision, the key is eligibility at the time of the plea, which by the way, has not been established, despite the burden on reopening to establish it, that there even was a plea, but nonetheless, eligibility at the time of the plea under the law, then in effect. And what those three cases that I just mentioned all establish is that those who've been granted relief under this retroactivity theory, they were all eligible at the time of the plea. They had all accrued the necessary continuous physical presence, which is a requirement in suspension of deportation. In fact, it's ten years of continuous physical presence after release from prison, after release from prison. In the Hernandez-Day-Anderson decision, the Court makes clear that the suspension eligibility, and this is at page 497F3rd, page 931, she has not been able to apply for suspension of deportation until ten years after her release from prison. In this case, Mr. St. Cyr. Sotomayor, that seems kind of inconsistent with St. Cyr, where perhaps the individual should not have pled to whatever it was. St. Cyr involved the 212C relief, which applies to lawful permanent residence, in which case seven years of unrelinquished residence is required. It's different in suspension of deportation with respect to an illegal alien, and in this case, because of the ten years of continuous physical presence requirement after release from prison, his documentation indicates a conviction in 86, 19 months. The earliest at which he would have been released from prison under his own admissions is July of 1988. Ten years plus brings you to July of... Ninety-eight. This is what I said. 1988 brings you to July of 1998. IRERA was enacted in September of 96, and its effective date is April of 97. So even if he were able to have accrued time, putting aside the requirement that he be eligible at the time of the plea, which it's not, and then file an application, it would be after the enactment of IRERA and its effective date at which suspension of deportation was repealed and cancellation of removal rules apply. So we're really then back to whether what he pled to, even under the best scenario, is really an aggravated felony. And we really don't know that. Yes, but I think that the jurisdictional hurdle of the failure to exhaust an administrative remedy in not asserting or raising these issues before the board on reopening are significant. Well, what would be the harm in allowing Competent Counsel the opportunity to attempt to establish that? I — the standard that this Court has applied in evaluating prejudice is whether on the motion to reopen they demonstrated, in light of the asserted ineffective assistance of counsel, whether there is a plausible ground for relief. What Petitioner is asking is for the opportunity to do some more investigation about facts and circumstances of which it is Petitioner who is the best situated to bring and elucidate that, and on whom is the burden to elucidate that before the agency. And despite several opportunities, a hearing before an immigration judge, a motion to reopen, and even now, before this Court, even though it would not be in the administrative record and concededly outside of the Court's purview to look at it, even now, there's been no proffer of any such information. The reopening statute and regulations have been enacted to address circumstances where things are not clear, and therefore, it assigns burdens and asks the Court to make a — excuse me, asks the Board to make a determination on plausible grounds for relief, of which none were apparent here. And that is why the Court should sustain the Board's decision. Okay. I'd let you go over. So we'll hear — are you going to do the rebuttal? To address the argument that was just being made, that Petitioner was best situated to rebut any evidence of a conviction in the record, I think that he did not get that opportunity because of his ineffective assistance of counsel. And it is not true that it is his burden on reopening to show that he definitely would qualify for relief. He has to make a — He only has to make a — Sort of like a prima facie showing that he would be eligible — A plausible — — for cancellation. Exactly. And I think that there — the case law says there is one case, Cortez-Acosta v. INS. It's 234 F.3.D. 476, where the Ninth Circuit said that if there is a negative inference in the record, that is not enough to be — that is not enough to preclude a decision to determine what occurred. Is that in the context of a motion to removal? I mean, a motion to reopen? It was in — it was — yes, it was in the context of addressing a due process argument. Do you agree with the government's counsel, as he answered Judge Fletcher's question about suspension, that in order to establish eligibility for suspension of deportation, one of the criteria was — in the event of a conviction, one of the criteria was 10 years' continuous residence from the date of the — or release or date of the conviction? Is that — is that what the statute requires? The statute, as I understand it, does require 10 years of continuous residence. But from when? Well, once — I think it's — I think it's conflating the two — the requirement for good moral character. So if you don't have 10 years of residence after the conviction, I believe that that's the issue that comes into play, is that if you don't have the 10 years of residence, then you can't have the good moral character and the 10 years of residence at the same time. But you don't — I don't believe that it requires — because it says that she was a good person of good moral character during that period. During that 10-year period, I see. So — exactly. So that 10 years, then, is an essential element of suspension. To the extent that — to the extent that whatever that conviction was would automatically preclude you from having good moral character. Here, we don't know that this — certainly in 1986, it was before the 1990 amendment, it wouldn't automatically preclude Mr. Solis from having good moral character. And you're saying that the 10 years relates to good moral character, not presence post-release from prison? Well, the presence — there are two separate requirements. The first requirement is that you have 10 years of presence. And then the second requirement is that during that 10-year period, you have good moral character. So arguably, if you were in prison during that 10 years, you don't need to be 10 years post-release to disqualify you from having good moral character. So to the extent that whatever his conviction was did not disqualify him, he doesn't need 10 years post-his release. But I would agree that if his conviction automatically barred him from having — from a finding of good moral character, then he would need 10 after his release. Okay. Thank you. You're over. Thank you. Thank you to the audience. In that case, we appreciate the help from pro bono counsel — amicus — pro bono amicus counsel. We appreciate that. Thank you, Mr. Etienne. Thank you, Mr. Cantor. Thank you.
judges: B. Fletcher, Paez, Ezra